**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JUMBO TECHNOLOGY CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>EVOLUTION US LLC and<br>EVOLUTION MALTA LIMITED,<br><br>Defendants. | ) | C.A. No: 25-cv-660-JCG<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT EVOLUTION MALTA LIMITED'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

OF COUNSEL:

Barry J. Herman
Julie C. Giardina
WOMBLE BOND DICKINSON (US) LLP
100 Light Street, 26th Floor
Baltimore, MD 21202
(410) 545-5830
barry.herman@wbd-us.com
julie.giardina@wbd-us.com

Matthew K. Blackburn
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2800
San Francisco, CA 94111
(650) 687-8442
matt.blackburn@wbd-us.com

Dana K. Severance
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320
dana.severance@wbd-us.com

*Attorneys for Defendant Evolution Malta Limited*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..........1

II. NATURE AND STAGE OF THE PROCEEDINGS ..........2

III. SUMMARY OF THE ARGUMENT ..........3

IV. STATEMENT OF FACTS ..........4

V. LEGAL STANDARD ..........7

VI. ARGUMENT ..........9

A. The '459 Patent Is Invalid Under 35 U.S.C. § 101. ..........9

1. *Alice* Step One: The Claims Are Directed to the Abstract Idea of Dynamically Raising Payout Odds in Gambling Games. ..........9

2. *Alice* Step Two: The Independent Claims Add No Inventive Concept—Only Generic Gambling Components Performing Their Ordinary Functions. ..........13

3. *Alice* Step Two: The Dependent Claims Add Nothing—Only Conventional Games, Displays, and Aesthetics. ..........17

B. Amendment Would Be Futile Because the Specification Contains No Technical Details That Could Supply an Inventive Concept ..........18

VII. CONCLUSION ..........19

# TABLE OF AUTHORITIES

**Cases**

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ........................................................................ *passim*

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016) ..........................................................20

*Arrhythmia Rsch. Tech., Inc. v. Corazonix Corp.*,
958 F.2d 1053 (Fed. Cir. 1992) ..........................................................21

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*,
687 F.3d 1266 (Fed. Cir. 2012) ......................................................8, 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................8

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024) .................................................. *passim*

*Bilski v. Kappos*,
561 U.S. 593 (2010) ............................................................................16

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
859 F.3d 1352 (Fed. Cir. 2017) ......................................................8, 23

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) ..........................................................15

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ..........................................................12

*Game Play Network, Inc. v. Potent Sys., Inc.*,
No. 23-323-GBW, 2024 WL 3226214 (D. Del. June 28, 2024) ................... 14, 21

*In re Killian*,
45 F.4th 1373 (Fed. Cir. 2022) ...........................................................17

*In re Marco Guldenaar Holding B.V.*,
911 F.3d 1157 (Fed. Cir. 2018) ............................................... 11, 21, 22

*In re Smith*,
815 F.3d 816 (Fed. Cir. 2016) ........................................................... 11, 21

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) ..............................................................17

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
566 U.S. 66 (2012) ..............................................................................1

*NEXRF Corp. v. Playtika Ltd.*,
547 F. Supp. 3d 977 (D. Nev. 2021) .......................................................14

*Recentive Analytics, Inc. v. Fox Corp.*,
692 F. Supp. 3d 438 (D. Del. 2023) ........................................................23

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023) ..................................................................20

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) ..............................................................10

*Scibetta v. Slingo, Inc.*,
No. 16-8175, 2018 WL 466224 (D.N.J. Jan. 17, 2018) ..............................15

*Thales Visionix Inc. v. United States*,
850 F.3d 1343 (Fed. Cir. 2017) ..............................................................12

*Trading Techs. Int'l, Inc. v. IBG LLC*,
921 F.3d 1084 (Fed. Cir. 2019) ......................................................... 18, 23

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023) ................................................................20

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) .......................................... 17, 18, 19, 21

**Statutes**

35 U.S.C. § 101 ........................................................................... *passim*

35 U.S.C. § 102 ..............................................................................17

**Rules**

Fed. R. Civ. P. 12(b)(6)..........................................................................................2, 8

## I. INTRODUCTION

Plaintiff Jumbo Technology Co., Ltd.'s ("Jumbo") patent does not claim a patent-eligible invention. In its seminal decision in *Alice Corp. v. CLS Bank International*, the Supreme Court held that claims directed to an abstract idea are only patent-eligible when they include sufficient "additional features" to "'transform' the claimed abstract idea into a patent-eligible application." 573 U.S. 208, 221 (2014) (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 79 (2012)). Here, the asserted U.S. Patent No. 9,646,459 (the "'459 Patent") (D.I. 54-1) clearly targets an abstract idea—dynamically increasing payout odds in gambling games. Essentially, the '459 Patent describes a two-layered approach to gambling: (1) a basic game with known odds, like Baccarat, and (2) a dynamic increase in some of those odds. The result is that players gamble twice, once on the results of the basic game and once on the chance of their original odds increasing.

However, the '459 Patent lacks any "additional features" that would transform this abstract idea into a patent-eligible invention. Critically, the '459 Patent fails to explain the heart of the alleged invention: ***<u>how</u>*** the increased odds are determined. Instead, the '459 Patent merely describes the goal—dynamically raising odds—and claims ownership of that goal in the context of every gambling game, from Baccarat to roulette to dice. To this abstract notion of dynamically increased odds, the '459 Patent formulaically tacks on basic gambling equipment, like "a

betting table" and "an electronic display board." D.I. 54-1 at Claim 1. The '459 Patent also includes jargon-rich claim elements, like "a calculation element" that includes "a dynamic raised odds choosing module." But these terms are substantively empty, describing only the results the '459 Patent hopes to achieve, not an invention for doing so. Courts have long held that such wishful, results-oriented claiming fails to provide an "inventive concept."

Accordingly, the '459 Patent is invalid under 35 U.S.C. § 101. Defendant Evolution Malta Limited ("Evolution Malta") should not be forced to litigate, and this Court should not be burdened with adjudicating, a patent that fails as a matter of law. Dismissal with prejudice is warranted.

## II. NATURE AND STAGE OF THE PROCEEDINGS

Jumbo filed its original Complaint on May 29, 2025, against Defendant Evolution US LLC ("Evolution US"). D.I. 1. Evolution US moved to dismiss pursuant to Rule 12(b)(6), and on January 22, 2026, the Court granted the motion in part. D.I. 13; D.I. 26. Jumbo filed its First Amended Complaint on January 30, 2026 (D.I. 30), and Evolution US answered and asserted counterclaims (D.I. 36). On June 22, 2026, the Court granted Jumbo leave to file the Second Amended Complaint, which added Evolution Malta as a defendant. D.I. 52 – D.I. 54. The parties are engaged in claim construction. Substantial completion of document production is due October 29, 2026 and fact discovery closes on February 19, 2027. D.I. 46 at 2.

## III. SUMMARY OF THE ARGUMENT

1. The ’459 Patent is directed to dynamically raising payout odds in gambling games. For numerous reasons, this concept is an abstract idea. To start, Jumbo’s patent is directed to a fundamental economic practice long prevalent in our system of commerce: the use of increased odds to attract gambling customers. Moreover, key terms in the claims are purely functional and result-oriented, specifying ***what*** the alleged invention does (selecting enhanced odds) but not *how* it accomplishes this result. Because the claims are not limited to a particular mechanism or process, the ’459 Patent thus purports to cover any gambling system for dynamically increasing odds. And the ’459 Patent’s game-agnostic scope—applied to Baccarat, roulette, dice games, or any other game of chance—would impermissibly preempt the concept of dynamically raising payout odds across the entire gaming industry. Indeed, the Federal Circuit has consistently held that claims to wagering systems with features like these are directed to abstract ideas.

2. The ’459 Patent further lacks any inventive concept. The three components recited in the independent claims—a betting table, a calculation element, and an electronic display board—are either generic gambling equipment or vacuous functional components devoid of any inventive content. Nor are there any potential factual issues foreclosing dismissal at the pleadings stage. The specification itself rules out any factual dispute, describing each component in

generic and/or functional terms without any algorithm, architecture, or implementation details. Other hallmarks of "inventive concept" are likewise absent. For instance, the claims do not improve computer functionality or any other technology.

3. The additional elements of the dependent claims also fail to provide an "inventive concept." Those claims merely limit the invention to particular well-known gambling games (like Baccarat) or specify conventional display hardware and lighting features.

4. Finally, allowing Jumbo to amend the complaint a third time would be futile. The specification contains no technical details, such as an algorithm, software implementation, or unconventional features, that could supply an inventive concept. The '459 Patent describes only the abstract concept of "dynamically raised payout odds" implemented with components that are either generic or purely functional. No argument, discovery, or claim construction can cure these inherent and fundamental defects. Dismissal should be with prejudice.

## IV. STATEMENT OF FACTS

The '459 Patent, entitled "Incentive Apparatus for Gambling Game Systems," issued on May 9, 2017. The specification is remarkably candid about the '459 Patent's business purpose. Its "primary object" is to "increase appeal" and "attract players' attention to place bets" so that "utilization of the gambling game system can

be increased to achieve maximum business benefit." D.I. 54-1 at 1:12-13, 1:50-52, 2:8-16. The problem the '459 Patent addresses is not technological—it is that "[t]he fixed odds [of prior art gambling game systems] make players feel bored easily and reduce the appeal for the players after a short duration." *Id.* at 1:37-42.

The specification provides an example of dynamic raised odds in the context of Baccarat, a well-known card game with well-established odds. *Id*. at 1:25-34. Players in Baccarat can bet on "five game results, i.e., banker wins, tie, player wins, banker pair and player pair." *Id*. at 2:52-53. The specification describes the alleged invention as using random numbers to identify one of these results and to determine an increase to the odds for that result. *Id*. at 3:13-15. For instance, the result of "banker pair," which normally provides 1 to 11 odds (that is, a bet of $1 wins $11), might be selected to provide 1 to 12 or even 1 to 30 odds. *Id*. at 3:27-40. However, the increase in odds is not entirely random, as the '459 Patent describes an approach whereby higher increases in odds are less likely, such as an increase to 1 to 12 odds occurring 80% to 90% of the time compared to an increase to 1 to 30 odds occurring only 0.5% of the time. *Id*. By making higher odds less likely, the player's chance of winning "is controlled below 100%." *Id*. at 3:40. Thus, the '459 Patent simply adds another layer of gambling on top of gambling. Players gamble both on the results of a basic game (like Baccarat) and on the chance of their odds increasing.

The '459 Patent contains two independent claims (Claims 1 and 8), both of

which include three elements: (1) a "betting table," (2) a "calculation element" that contains a "dynamic raised odds choosing module" and a "payout module," and (3) an "electronic display board."[1] The key difference between the two claims is that Claim 1 covers a betting table with a separate display board, while Claim 8 requires the betting table to include "an electronic screen" with the display board "integrated" into it. *Id.* at Claims 1, 8.

However, the '459 Patent does not limit these claims to particular betting games. Rather, it targets a bare "dynamic raised odds" concept applicable to Baccarat, roulette, dice games, or "any other game of chance." *Id.* at 3:62 – 4:5, Abstract. Likewise, the independent claims refer merely to a "gambling game system" with no limitation to particular games. *Id.* at 4:19-20. Even the "betting table" lacks meaningful detail, as the '459 Patent explicitly states that it may "be an electronic betting interface with an electronic screen." *Id.* at 3:48-49. In other words, Jumbo seeks to own the concept of varying payout odds across the entire gambling industry applied to all games and all playing modalities.

Moreover, the specification provides no technical detail for any claimed

[1] Other parts of the '459 Patent parse the elements of the alleged invention slightly differently. For instance, the "Summary of the Invention" describes a "gambling game system" involving a "betting table" and an "incentive apparatus" with three subparts: (1) a "dynamic raised odds calculation element," (2) an "electronic display board," and (3) a "payout element." D.I. 54-1 at 1:53 – 2:2. These differences do not matter for the purposes of this Motion.

component. For the "calculation element," the '459 Patent provides no algorithm, no processor architecture, and no implementation details. The '459 Patent simply says that the calculation element "randomly selects" and "generates" new odds without specifying any technique for random selection or any method for generating odds. *Id*. at 1:60-63. Even in the Baccarat example described above, the specification does not explain why the chance of an increase for the "banker pair" to 1 to 12 odds should be 90%, while an increase to 1 to 30 odds should be 0.5%. The specification readily admits this gap in the description of the alleged inventions, stating that the probability calculations "can be determined through mathematical calculation according to actual requirements or announced regulations, ***details are omitted herein***." *Id.* at 3:45-50 (emphasis added).

Similarly, the dependent claims add nothing of substance. They merely specify which century-old gambling game is being played (dice, roulette, Baccarat), what type of conventional display is used (electronic screens, touch screens), or how the display looks (color changes, luminosity increases). *Id.* at Claims 2-7, 9-15. Not one dependent claim identifies any algorithm, any specific technology, or any non-conventional arrangement of components.

## V. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007). Whether a patent is eligible under § 101 is a question of law that is often resolved at the pleading stage, and claim construction is not an "inviolable prerequisite" to that determination. *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012); *see also Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (collecting cases). Courts routinely resolve § 101 challenges before claim construction where the patentee identifies no claim construction dispute material to the eligibility inquiry. *See Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024) (affirming Rule 12(b)(6) dismissal under § 101 and resolving eligibility from the claims as pleaded).

Patent eligible subject matter excludes "laws of nature, natural phenomena, and abstract ideas," including "fundamental economic practice[s] long prevalent in our system of commerce." *Alice*, 573 U.S. at 216, 219-20. Under the *Alice* framework, a court first evaluates whether the claims are "directed to" an abstract idea. *Id.* at 217-18. Courts consider several features in making this determination, including whether the claims "broadly recite generic steps," "are drafted using largely (if not entirely) result-focused functional language," or target longstanding real-world activities. *Beteiro*, 104 F.4th at 1355-56. In *Alice* Step Two, a court asks whether the claim elements contain an "inventive concept" sufficient to transform an abstract idea into patent-eligible subject matter. *Alice*, 573 U.S. at 217-18.

Generic, conventional components performing their ordinary functions cannot supply an inventive concept, nor can the abstract idea itself, "no matter how groundbreaking the advance." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1170 (Fed. Cir. 2018); *see also Alice*, 573 U.S. at 225-26.

# VI. ARGUMENT

## A. The '459 Patent Is Invalid Under 35 U.S.C. § 101.

### 1. *Alice* Step One: The Claims Are Directed to the Abstract Idea of Dynamically Raising Payout Odds in Gambling Games.

The '459 Patent's specification reveals that its claims are directed to an abstract idea, not a technological invention. The specification states that the patent's "primary object" is to "increase appeal," to "attract players' attention to place bets," and to ensure that "utilization of the gambling game system can be increased to achieve maximum business benefit." D.I. 54-1 at 1:12-13, 1:50-52, 2:8-16. The problem the '459 Patent addresses is not technological, it is that "[t]he fixed odds [of prior art gambling game systems] make players feel bored easily." *Id.* at 1:37-42. This is just the psychology of gambling. The claims accordingly recite results—"randomly select[] a specific number of the game results" and "generat[e] dynamic raised odds." *Id.* at Claim 1. This is a fundamental economic practice—varying incentives to attract customers—dressed in gambling terminology.

As detailed above, Claim 1 purports to recite an "incentive apparatus" comprising a betting table, a calculation element, and an electronic display board.

*Id.* at Claim 1. But labeling a claim an "apparatus" does not make it one for § 101 purposes. At its core, the claim describes a wagering game activity: accepting bets, randomly selecting which results receive enhanced odds, displaying those updated odds, conducting the gambling game, and paying winners according to the odds. The Federal Circuit has uniformly held such general wagering-game claims to be directed to abstract ideas. *See, e.g.*, *Beteiro*, 104 F.4th at 1354-55; *In re Smith*, 815 F.3d 816, 818-19 (Fed. Cir. 2016); *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1160 (Fed. Cir. 2018).

The fact that because the claims recite an "apparatus" does not mean that they are directed to patent-eligible subject matter. The Federal Circuit has repeatedly rejected this formalism. The § 101 inquiry looks to the "focus" or "character as a whole" of the claims, not their facial recitation of hardware. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016); *see also Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017). Where, as here, the claimed "apparatus" is merely generic components recited at a high level of generality to implement an abstract concept, the claims are directed to that concept, not to any technological improvement. The '459 Patent's "betting table," "calculation element," and "electronic display board" are not claimed with any specificity; they are generic placeholders for conventional equipment. Indeed, the "betting table" need not even be a table, as the specification states it can also be an "electronic

interface." *Id*. at 3:65-66, 4:5. The focus of the claims is simply wagering with dynamically raised odds, not any improvement to gambling technology.

The Federal Circuit's 2024 decision in *Beteiro* is particularly instructive. There, the claims were directed to "exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located." *Beteiro,* 104 F.4th at 1355. The Federal Circuit held these claims abstract because they were "largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results." *Id.* at 1356. The '459 Patent's claims suffer from the same defect. They recite the functional result of "randomly select[ing]" a game result and "generat[ing]" dynamic raised odds that are "sufficient[ly]" high to attract players while at the same time producing payouts low enough to "achieve maximum business benefit." D.I. 54-1 at 1:60-63, 2:12-13, 4:17. Yet the '459 Patent fails to specify how these crucial functions are achieved. To the contrary, the '459 Patent explicitly states that these "calculation … ***<u>details are omitted herein</u>***." *Id.* at 3:45-47 (emphasis added).

*In re Marco Guldenaar* is a close factual analogue. There, the claims recited "a method of playing a dice game" comprising placing a wager, rolling dice, and paying out based on specified odds. 911 F.3d at 1159. The Federal Circuit held the claims abstract, rejecting the argument that specific die configurations or odds values could save them. *Id.* at 1160-61. The '459 Patent's "dynamic raised odds" is

indistinguishable—merely a different implementation of the abstract concept of wagering at specified odds.

These decisions build on *In re Smith*, where the Federal Circuit held that claims for "a method of conducting a wagering game" were abstract because they were "directed to rules for conducting a wagering game"—a "'fundamental economic practice[]' found abstract by the Supreme Court." 815 F.3d at 818 (quoting *Alice*, 573 U.S. at 220). District courts, including this Court, have consistently followed this precedent. *See, e.g.*, *Game Play Network, Inc. v. Potent Sys., Inc.*, No. 23-323-GBW, 2024 WL 3226214 (D. Del. June 28, 2024) (claims directed to "the rules of a wagering game" are "abstract"); *NEXRF Corp. v. Playtika Ltd.*, 547 F. Supp. 3d 977, 987 (D. Nev. 2021) (claims directed to "remotely playing a slot machine" were abstract); *Scibetta v. Slingo, Inc.*, No. 16-8175, 2018 WL 466224, at *10 (D.N.J. Jan. 17, 2018) (claims directed to wagering game with cards was abstract).

In addition, the '459 Patent does not improve any gaming hardware, software architecture, or technological process. It claims only a different way of calculating and presenting odds to players. The Federal Circuit has consistently held that an improvement in the abstract idea itself is not an improvement in technology. *SAP Am.*, 898 F.3d at 1168.

Indeed, the claimed process is merely a mental or mathematical process. A telltale sign of abstraction is when the claimed functions "can be performed in the human mind, or by a human using a pen and paper." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). A pit boss could perform every claimed function—select random outcomes, display odds, and pay winners—with nothing more than a pen, paper, and perhaps a coin (to add some extra randomness). *See Beteiro*, 104 F.4th at 1355-56. Nothing in the claims requires more than what humans have performed for centuries.

Moreover, the claims' extraordinary breadth confirms they would impermissibly preempt the abstract idea. *See Bilski v. Kappos*, 561 U.S. 593, 611-12 (2010). The '459 Patent claims any gambling game—Baccarat, roulette, dice, or similar games—played on either a physical or electronic table, using any means of selecting results and modifying odds. If upheld, no casino or gaming company could implement any variation of enhanced payout odds without licensing the '459 Patent. That is precisely the preemption § 101 prevents. *See Alice*, 573 U.S. at 217.

#### 2. ***Alice* Step Two: The Independent Claims Add No Inventive Concept—Only Generic Gambling Components Performing Their Ordinary Functions.**

The claims add nothing that transforms this abstract idea into patent-eligible subject matter. At Step Two, the Court asks whether the claims contain an "inventive concept," something beyond "well-understood, routine, conventional activit[ies]"

that could supply the "something more" required for eligibility. *Alice*, 573 U.S. at 221, 225. "Instructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible." *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015). Also, purely functional claiming cannot provide an "inventive concept." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017). Moreover, where a patent's own disclosure admits that the claimed elements are conventional, "no further evidence is needed." *In re Killian*, 45 F.4th 1373, 1385 (Fed. Cir. 2022). Here, the '459 Patent's basic components—a betting table, a calculation element, and a display board—do not provide any inventive concept.

To start, the "betting table" is either entirely conventional or a generic computer implementation of a generic gambling table. The specification describes the "betting table" as possessing generic gambling features long found in gambling houses, such as a table containing "betting zones" for "game results" with "payout odds." D.I. 54-1 at Claim 1. Plainly, the '459 Patent does not purport to have invented the gambling table. The specification further states that the "betting table" can "also be an electronic betting interface with an electronic screen." *Id.* at 3:48-49. However, the specification does not describe ***any*** computer system for implementing such a virtual table, much less an unconventional one.

The "calculation element" likewise lacks any inventive concept. As explained above, it is claimed only by its desired results—selecting a game result and replacing its payout odds with "dynamic raised odds"—not by any technological implementation. The specification brazenly admits that the process for determining dynamic raised odds is "omitted." *Id.* at 3:45-47. That result-oriented functional claiming cannot transform an abstract idea into patent-eligible subject matter. *Two-Way Media Ltd.*, 874 F.3d at 1339.

The "electronic display board" is a conventional display performing a conventional function. Merely displaying information is well-understood, routine, and conventional activity that does not supply an inventive concept. *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019). The specification identifies no new display technology or implementation details, only a board that displays odds. *See* D.I. 54-1 at Claim 1. Electronic display boards are ubiquitous in modern casinos; adding one to an abstract wagering method does not supply an inventive concept.

The ordered combination of the claim elements also adds nothing inventive. *See Alice*, 573 U.S. at 217. The three components merely perform the ordinary sequence of a gambling game—accept bets, determine outcomes, display results, and pay winners. Each component performs its single, expected function in the same sequence used in every casino since gambling began. There is no "inventive"

interaction—just serial execution of conventional steps: a betting table "connected to" a calculation element "connected to" a display board. The claims do not specify how these components are connected, where they are located relative to each other, or what technical interface they use—only that they are "connected," the baseline requirement for any system with multiple parts. *See Two-Way Media Ltd.*, 874 F.3d at 1339.

Nor do the claims improve computer functionality. The Federal Circuit distinguishes claims that improve technology from claims that merely invoke generic machinery to implement an abstract idea. *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016). The '459 Patent falls in the latter category: its components perform only their ordinary functions—calculating, displaying, accepting bets. *See Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1363 (Fed. Cir. 2023). Similarly, the added speed of computer calculations does not supply an inventive concept. The Federal Circuit has held that "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept." *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 705 (Fed. Cir. 2023); *see also Trinity Info Media*, 72 F.4th at 1363-64. That a computer calculates odds faster than a pit boss is not an inventive concept.

Finally, even if the '459 Patent were novel (and it is not), that would not affect the § 101 analysis. The Court may assume that "dynamic raised odds" is "[g]roundbreaking, innovative, or even brilliant," but "that is not enough for eligibility." *SAP Am.*, 898 F.3d at 1163. Section 102 addresses novelty; § 101 addresses eligibility. *See Two-Way Media*, 874 F.3d at 1340.

Importantly, Jumbo cannot avoid dismissal simply by alleging, without support, that *Alice* Step Two involves factual issues. *Arrhythmia Rsch. Tech., Inc. v. Corazonix Corp.*, 958 F.2d 1053, 1055-56 (Fed. Cir. 1992). Here, the specification itself forecloses any dispute: it describes each component in purely conventional and/or functional terms, and admits the omission of key implementation details. There is nothing for a factfinder to resolve. Indeed, in wagering games cases like this, courts often resolve Step Two at the pleading stage. *See Beteiro*, 104 F.4th at 1356-57; *In re Smith*, 815 F.3d at 819; *In re Marco Guldenaar*, 911 F.3d at 1161-62; *see also Game Play Network*, 2024 WL 3226214, at *8.

**3. *Alice* Step Two: The Dependent Claims Add Nothing—Only Conventional Games, Displays, and Aesthetics.**

The dependent claims fall into two categories, neither of which adds an inventive concept. First, Claims 2-4 and 9-11 merely specify which century-old gambling game the "apparatus" is used for: dice (Claims 2, 9), roulette (Claims 3, 10), or Baccarat (Claims 4, 11). But limiting an abstract wagering method to a particular conventional game does not confer patentability. Indeed, the Federal

Circuit has already held that claims reciting dice games and betting on game outcomes are abstract. *See In re Marco Guldenaar*, 911 F.3d at 1160-61. A claim limiting "dynamic raised odds" to Baccarat is no more patent-eligible than a claim to "dynamic raised odds" for any other game.

Second, Claims 5-7 and 12-15 specify conventional display hardware and lighting features: electronic screens (Claims 5-6, 12), touch screens (Claims 7, 13), display zones "abutting" betting zones (Claim 14), and visual effects like "color change, luminosity increase or profile highlight" (Claim 15). None of these features supplies an inventive concept. The '459 Patent describes only conventional electronic screens and touch screens, and courts have long found that displaying information on a screen is "well-understood, routine, [and] conventional." *Trading Techs.*, 921 F.3d at 1093.

### B. Amendment Would Be Futile Because the Specification Contains No Technical Details That Could Supply an Inventive Concept.

A review of the '459 Patent specification confirms that amendment of the complaint would be futile. The specification describes only the abstract idea of "dynamic raised odds" and generic components for implementing it. The specification discloses no algorithm for the "calculation element," no processor architecture, no software implementation, and no unconventional arrangement of components. There is simply nothing in the '459 Patent that could supply an

inventive concept. *See Recentive Analytics, Inc. v. Fox Corp.*, 692 F. Supp. 3d 438, 457 (D. Del. 2023), *aff'd*, 134 F.4th 1205 (Fed. Cir. 2025).

In particular, amendment would be futile even though the Court has not yet construed the asserted claims. The Federal Circuit routinely affirms pleadings-stage dismissals on eligibility grounds issued before any claim construction where, as here, the patentee cannot show that any proposed construction could supply an inventive concept or negate abstraction. *See Cleveland Clinic Found.*, 859 F.3d at 1360; *see also Bancorp*, 687 F.3d at 1273-74 (noting that claim construction is not an "inviolable prerequisite" to a validity determination under Section 101). No construction of "betting table," "calculation element," or "dynamic raised odds" can import into the claims some algorithm, processor architecture, or implementation details that the '459 Patent nowhere describes.

## VII. CONCLUSION

The '459 Patent is directed to the age-old idea of enticing gamblers with better odds. Jumbo seeks to own the concept of variable payout odds across the entire gaming industry—every game, every table, and every screen. Section 101 exists precisely to prevent such monopolization of fundamental ideas. For the foregoing reasons, Evolution Malta respectfully requests that the Court dismiss the Second Amended Complaint with prejudice and hold the '459 Patent invalid under § 101.

Dated: August 14, 2026

Respectfully submitted,

/s/ *Dana K. Severance*
Dana K. Severance (#4869)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320
dana.severance@wbd-us.com

*Attorneys for Defendant Evolution Malta Limited*

*Of Counsel:*

Barry J. Herman
Julie C. Giardina
WOMBLE BOND DICKINSON (US) LLP
100 Light Street, 26th Floor
Baltimore, MD 21202
(410) 545-5830
barry.herman@wbd-us.com
julie.giardina@wbd-us.com

Matthew K. Blackburn
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2800
San Francisco, CA 94111
(650) 687-8442
matt.blackburn@wbd-us.com

## WORD COUNT CERTIFICATION

The undersigned counsel hereby certifies that the foregoing document complies with the type, font and word limitations set forth in this Court's Standing Order Regarding Briefing in All Cases. The foregoing document is in 14-point Times New Roman font and contains 4,453 words, which were counted by using the word count feature in Microsoft Word. The word count does not include the cover page, tables of contents and authorities, signature block, and word count certification.

*/s/ Dana K. Severance*
Dana K. Severance (#4869)