IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JUMBO TECHNOLOGY CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-660 (JCG) |
| | ) | |
| EVOLUTION US LLC and EVOLUTION MALTA LIMITED, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT**
**EVOLUTION MALTA LIMITED'S MOTION TO DISMISS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Brian P. Egan (#6227)
Cameron P. Clark (#6647)
J. Layne Lancaster (#7616)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@morrisnichols.com
began@morrisnichols.com
cclark@morrisnichols.com
llancaster@morrisnichols.com

*Attorneys for Plaintiff*

OF COUNSEL:

Gerry Silver
SULLIVAN & WORCESTER LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 660-3096

Kimberly B. Herman
Ryan M. Rosenblatt
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800

September 11, 2026

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ......................................................................................1

II. SUMMARY OF ARGUMENT ....................................................................4

III. STATEMENT OF FACTS.........................................................................5

A. The ’459 Patent ........................................................................................5

B. Evolution’s Nevada Case ..........................................................................7

IV. LEGAL STANDARD ..............................................................................10

V. ARGUMENT ............................................................................................11

A. *Alice* Step One: Evolution Fails to Show That the ’459 Patent is Directed to an Abstract Idea ................................................11

B. *Alice* Step Two: The Claims of the ’459 Patent Contain an Inventive Concept..............................................................................17

VI. CONCLUSION .........................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018) ....................11

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014).................... *passim*

*Anderson v. Kimberly-Clark Corp.*,
570 F. App'x 927 (Fed. Cir. 2014) ....................2

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) ....................18

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024) ....................13, 14

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019) ....................19

*Contour IP Holding LLC v. GoPro, Inc.*,
113 F.4th 1373 (Fed. Cir. 2024) ....................16

*Data Health Partners, Inc. v. Teladoc Health, Inc.*,
734 F. Supp. 3d 315 (D. Del. 2024)....................2

*Dealertrack, Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012) ....................6

*Diamond v. Diehr*,
450 U.S. 175 (1981)....................10

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ....................10, 11

*Evolution Malta Limited v. Light & Wonder, Inc.*,
C.A. No. 2:24-993-CDS-NJK, 2026 WL 937956 (D. Nev. Apr. 6, 2026) ....................9

*Game Play Network, Inc. v. Potent Sys., Inc.*,
C.A. No. 23-323-GBW, 2024 WL 3226214 (D. Del. June 28, 2024) ....................14, 15

*In re Marco Guldenaar*,
911 F.3d 1157 (Fed. Cir. 2018) ....................8, 13, 17

*In re Smith*,
815 F.3d 816 (Fed. Cir. 2016) ....................8, 13, 15, 17

*Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015) ....................10

*Mayo Collab. Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012)....................10

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ....................16

*Mentone Sols. LLC v. Digi Int'l Inc.*,
Case Nos. 2021-1202 & 2021-1203, 2021 WL 5291802 (Fed. Cir. Nov. 15, 2021) ....................10

*MyMail, Ltd. v. ooVoo, LLC*,
934 F.3d 1373 (Fed. Cir. 2019) ....................2

*NexRF Corp. v. Playtika, Ltd.*,
547 F. Supp. 3d 977 (D. Nev. 2021)....................8, 9, 14, 15

*Otto Bock HealthCare LP v. Össur HF*,
557 F. App'x 950 (Fed. Cir. 2014) ....................6

*Redwood Techs., LLC v. Netgear, Inc.*,
738 F. Supp. 3d 511 (D. Del. 2024)....................20

*Scibetta v. Slingo, Inc.*,
C.A. No. 16-8175-JMV, 2018 WL 466224 (D.N.J. Jan. 17, 2018) ....................14, 15

*Skillz Platform Inc. v. AviaGames Inc.*,
C.A. No. 21-2436-BLF, 2022 WL 783338 (N.D. Cal. Mar. 14, 2022) ....................12, 13

*Tuxis Techs., LLC v. Amazon.com, Inc.*,
C.A. No. 13-1771-RGA, 2014 WL 4382446 (D. Del. Sep. 3, 2014)....................4

*Ultramercial, Inc. v. Hulu, LLC*,
722 F.3d 1335 (Fed. Cir. 2013) ..........................................................................4

**Other Authorities**

37 C.F.R. 1.57(d) ..........................................................................................7

**Rules and Statutes**

35 U.S.C. § 101 .......................................................................................*passim*

## I. INTRODUCTION

Evolution Malta Limited ("Evolution") masks two critical, motion-dispositive facts in its attempt to render U.S. Patent No. 9,646,459 ("'459 Patent") unpatentable under 35 U.S.C. § 101.

First, Evolution repeatedly asserts that its Motion to Dismiss (D.I. 69) should be granted because the '459 Patent "describe[s] each component in generic and/or functional terms *without any algorithm, architecture, or implementation details*." D.I. 70 at 3-4 (emphasis added); *see also id.* at 1-2, 7, 11, 15, 17-19. Evolution omits from this narrative that the '459 Patent, through its specification and incorporation by reference of its parent application, *does* disclose an exemplary algorithm and the implementation of that algorithm to generate the dynamic raised odds in the claimed incentive apparatus. *See, e.g.*, Ex. 1 (U.S. Pat. App. No. 12/794,350) at [JUMBO_00031-34]. Specifically, the patent application discloses that the dynamic raised odds may be generated using the following algorithm:

$$E = [1 + \sum_{i=1}^{n} (APay_i \times AProb_i)] \times Prob$$

Where E is raised player's return ratio, 1 is the bet multiple, $APay_i$ are the raised odds, $AProb_i$ are the appearing probability corresponding to the raised odds.

*Id.* at [JUMBO_000032]; *see also* '459 Patent (D.I. 54-1) at 3:27-40 (detailing increased odds and weighted probabilities corresponding to player return ratio below 100%). This alone warrants denial of Evolution's Motion because there is, at

minimum, a factual dispute concerning the scope of the ’459 Patent and its claimed invention. [1]

Second, Evolution ignores its own pending patent-infringement case in the District of Nevada against another gaming company, which involves Evolution’s later-filed patents directed at largely the same technology as the ’459 Patent. *See* Ex. 2, *Evolution Malta Limited v. Light & Wonder, Inc.*, C.A. No. 2:24-993-CDS-NJK, D.I. 125 ¶ 18 (D. Nev. June 30, 2025) (the “Nevada case”) (acknowledging in Second Amended Complaint (“SAC”) asserted patents are “embodied in Lightning Roulette,” an accused product here).[2] Evolution’s pleadings in the Nevada case directly contradict the arguments it now presents to this Court. Before filing its

---

[1] That Evolution’s § 101 arguments implicate claim construction issues is a separate reason why its Motion should be denied. *See MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1381 (Fed. Cir. 2019) (vacating and remanding district court § 101 decision because “district court erred by failing to address the parties’ claim construction dispute before concluding, on a Rule 12(c) motion, that the MyMail patents are directed to patent-ineligible subject matter under § 101”).

[2] Evolution’s SAC from the Nevada case is a public record and is also cited and relied upon in Jumbo’s pleadings and thus can be considered by this Court in evaluating Evolution’s Motion. D.I. 54-4 at 3 (infringement chart relying upon Evolution’s SAC in Nevada case); *see also Data Health Partners, Inc. v. Teladoc Health, Inc.*, 734 F. Supp. 3d 315, 320 (D. Del. 2024) (“In considering a motion to dismiss, a district court may consider any document integral to or relied upon in a complaint and may take judicial notice of any public records.”). Likewise, the ’459 Patent’s parent application, U.S. Pat. App. No. 12/794,350, can be considered by the Court as it is both part of the ’459 Patent’s intrinsic record and it is “well-established that a court may take judicial notice of patents or patent applications.” *Anderson v. Kimberly-Clark Corp.*, 570 F. App’x 927, 932 n.3 (Fed. Cir. 2014).

Motion here, Evolution asserted in Nevada that the use of dynamic raised odds in gambling games is *not* abstract, dynamic raised odds *do* add an inventive concept that renders the technology patentable, and a gaming system that employs the use of dynamic raised odds is *distinguishable* from the claimed inventions at issue in each of the cases it now argues are "indistinguishable" from the facts of this case. *See id.* ¶¶ 59-135. At minimum, the contradictions between Evolution's prior and current assertions highlight that there are factual and legal disputes that cannot be resolved in Evolution's favor on this Motion.

In short, the '459 Patent's claimed incentive apparatus is not directed to an abstract idea and contains inventive concepts sufficient to survive the two-step *Alice* test. Indeed, the applicant overcame a post-*Alice* § 101 rejection during prosecution of the '459 Patent—another fact ignored by Evolution. Ex. 3 at [JUMBO_000154-56, 000172-74, 000210-11, 000214-16]. As Evolution asserted in the Nevada case, gambling devices that implement the use of dynamic raised odds (which Evolution calls "pseudo-randomly selected" multipliers or "Lucky Numbers") are not "an abstract idea, but are instead each directed to technological improvements in existing technology for new and improved games, including roulette, which encompasses features that were not available in traditional or prior electronic versions of those games." Ex. 2 ¶ 64. Evolution should be held to its prior pleadings and its Motion should be denied. In the alternative, Evolution's

Motion should be denied in view of the factual and legal disputes raised by the Motion and Evolution's shifting-sands approach to § 101.

## II. SUMMARY OF ARGUMENT

Evolution's Motion confirms that the two-step *Alice* test cannot be resolved in Evolution's favor at this or any other stage of the case. *See Tuxis Techs., LLC v. Amazon.com, Inc.*, C.A. No. 13-1771-RGA, 2014 WL 4382446, at *2 (D. Del. Sep. 3, 2014) ("At the motion to dismiss stage a patent claim can be found directed towards patent ineligible subject matter if the '*only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility.'" (quoting *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013))).

At step one, Evolution overgeneralizes its framing of the purported abstract idea, which alone warrants denial of its Motion. Separately, unlike the gaming-related precedent on which Evolution relies, the '459 Patent is not directed to abstract rules for playing a game. Nor does it fail to disclose "how" its claimed invention operates. Instead, the '459 Patent's claimed apparatus provides a technical improvement over conventional gaming technology and is thus not abstract.

At step two, the '459 Patent's claimed invention supplies an inventive concept that renders it patent eligible. Not only can an inventive concept lie in the non-conventional, non-generic arrangement of known components, the '459 Patent's introduction of new, original game elements—namely, a calculation element

including both a dynamic raised odds choosing module and a payout module—in combination with a betting table and electronic display board, transforms games "from the traditional model that seeks to imitate physical gaming to a system that adds excitement and unpredictability to the outcome." D.I. 54 ¶ 22.

Accepting Jumbo's allegations as true, the Second Amended Complaint's plausible allegations support a finding that the '459 Patent's claimed subject matter is patent eligible. Short of that, the factual and legal disputes (including claim construction disputes) implicated by Evolution's Motion warrant its denial.

## III. STATEMENT OF FACTS

### A. The '459 Patent

As Jumbo's Second Amended Complaint explains, "traditional gambling games have standard odds that are fixed and static, with relatively low return-to-player values. As a result, players often are easily bored, frustrated by losing money fast, and become discouraged by the perceived unfairness of the game, and as a result cease playing or do not play for long." D.I. 54 ¶ 21 (citing '459 Patent at 1:35-40). "The invention claimed in the '459 Patent solves this problem by providing a game system that dynamically raises certain odds of winning during game play." *Id.* ¶ 22 (citing '459 Patent at 1:50-52). The claimed invention is an elegant modification to games like roulette, baccarat, and dice because the dynamically raised odds promote increased utilization of the game system while also preserving a return to player ratio

for the game operator below 100%,[3] thus "achiev[ing] maximum business benefit." '459 Patent at 2:3-16; *see also* D.I. 54 ¶¶ 28-29.

The '459 Patent does more than just disclose that increased odds are randomly generated and provide examples of games where increased odds are applied. It also discloses *how* these increased odds can be generated. As noted above, the parent application to the '459 Patent, which is incorporated by reference in the '459 Patent, provides an algorithm for generating raised odds that uses weighted probabilities such that the player's return ratio is controlled below 100%:

$$E = [1 + \sum_{i=1}^{n} (APay_i \times AProb_i)] \times Prob$$

Ex. 1 at [JUMBO_000032]; '459 Patent at 1:4-8 (stating that "the entire contents" of its parent application, U.S. Pat. App. No. 12/794,350, "are hereby incorporated by reference"); *see also id.* at 3:27-40 (same variables for generating raised odds provided in exemplary embodiment of '459 Patent). This incorporation acts "as if [the parent application] were explicitly contained therein." *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1323 (Fed. Cir. 2012); 37 C.F.R. § 1.57(d)(1)-(3) ("essential material" may be incorporated by reference, including material that provides Section 112(a), (b), and (f) support for a claimed invention); *see also Otto Bock*

[3] A player's return ratio is referred to in the field of casino gaming as the "return to player" or "RTP". A game with an RTP of 96%, for example, informs players that, on average, they can expect to recover $96 for every $100 bet.

*HealthCare LP v. Össur HF*, 557 F. App'x 950, 955-56 (Fed. Cir. 2014) ("37 C.F.R. 1.57(d) specifically envisions using a U.S. patent application incorporated by reference to define structure for the purpose of 35 U.S.C. § 112, ¶ 6."). Evolution's Motion ignores this teaching. *See* D.I. 70 at 1 ("Critically, the '459 Patent fails to explain the heart of the alleged invention: ***how*** the increased odds are determined.").

### B. Evolution's Nevada Case

Evolution filed its SAC against Light & Wonder in the District of Nevada on June 30, 2025. Ex. 2. Among the patents asserted by Evolution are U.S. Patent Nos. 10,629,024, 11,011,014 ("'014 Patent"), and 11,756,371 ("'371 Patent") (collectively, the "Evolution Patents"). According to Evolution, the Evolution Patents are embodied in its Lightning Roulette product, *id.* ¶ 18, which is one of the products accused of infringing Jumbo's '459 Patent here. *See* D.I. 54-4 (Lightning Roulette infringement chart).

Evolution's pleadings in the Nevada case include a separate section titled "The Asserted Patents Are Directed to Patent Eligible Subject Matter," which spans 77 paragraphs across 30 pages and provides a detailed discussion as to why the Evolution Patents that describe "innovations never before implemented in traditional roulette games," including "facilitating unique features of a new and improved game of roulette such as the random selection of positions on the roulette wheel and associated increased payouts (multipliers) for those positions," are patent eligible.

Ex. 2 ¶ 83; *see generally id.* ¶¶ 59-135. The Evolution Patents' claims to its purported "novel and technological game features" largely mirror the '459 Patent's claimed dynamic raised odds choosing module technology. For example, Claim 1 of Evolution's '371 Patent generally claims "[a] system for wagering" that comprises "a ball," "a roulette wheel," and "at least one hardware processor" that is configured to "randomly or pseudo-randomly select" a position on the roulette wheel to have an increased payout and to determine that the increased payout is applicable to a bet made on the selected position. *Compare id.* ¶ 214, *with* '459 Patent, Claim 10. Unlike Jumbo's '459 Patent, however, the "how" is not provided—no algorithm or implementation details are disclosed in the Evolution Patents regarding its "randomly or pseudo-randomly" selected multipliers.

Among its pages of § 101 analysis, Evolution's Nevada pleading contradicts the arguments it makes here, arguing in Nevada that its claimed dynamic raised odds technology: (a) is not abstract under *Alice* step one; (b) contains inventive concepts that overcome *Alice* step two; (c) does not "unduly preempt the field for other innovations"; (d) "cannot be done in the human mind"; and (e) is "nothing like the claims found ineligible as directed to gaming-related abstract ideas in *In re Smith*, *Marco Guldenaar*, and *Planet Bingo* [and *NexRF*]." Ex. 2 ¶¶ 64, 68-74, 85-86, 97-99, 119, 127. Each of these points is diametrically opposed to what Evolution now argues in its Motion in this case.

In the end, the Evolution Patents' failure to describe "how" the invention worked proved detrimental in the Nevada case. In a non-binding decision, which remains subject to appeal,[4] the Nevada court held that the Evolution Patents were patent ineligible. Under *Alice* step one, the Nevada court concluded that the Evolution Patents and Evolution's pleadings "merely provide[] the results of the advancements (or features), but not means to achieve the results," noting "in particular" that "[representative] claim 1 of the '014 patent did not 'explain how any of the purported technical improvements work.'" *Evolution Malta Limited v. Light & Wonder, Inc.*, C.A. No. 2:24-993-CDS-NJK, 2026 WL 937956, at *5 (D. Nev. Apr. 6, 2026) (quoting *NexRF Corp. v. Playtika, Ltd.*, 547 F. Supp. 3d 977, 982 (D. Nev. 2021)). Then, under *Alice* step two, the Nevada court concluded that "the features described in claim 1 of the '014 patent [are] both generically described and claimed because the features describe[] *what* they can do and not *how* they can do it." *Id.* at *6.

---

[4] The *Light & Wonder* litigation is stayed pending arbitration of Evolution's non-patent claims. *See Evolution Malta Limited v. Light & Wonder, Inc.*, C.A. No. 2:24-993, D.I. 180 (D. Nev. May 5, 2026) (Minute Order staying case pending outcome of arbitration). It is unclear when the Nevada court's § 101 decision will become a final, appealable decision. Regardless, given that Evolution neither cited to nor endorsed the *Light & Wonder* decision here suggests it is preserving its right to appeal that decision so it can reverse course once again and embrace its original position that dynamic raised odds technology is patentable subject matter.

## IV. LEGAL STANDARD

"[A]ll inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collab. Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). Thus, even though it has long been recognized that "'laws of nature, natural phenomena, and abstract ideas' are not patentable," "too broad an interpretation of this exclusionary principle could eviscerate patent law." *Id.* at 70-71 (quoting *Diamond v. Diehr*, 450 U.S. 175, 185 (1981)).

Under the two-step test recognized by *Alice*, a court first determines whether the claims, "considered in light of the specification" and accounting for "their character as a whole," are directed at a patent-ineligible abstract concept. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). If so, the court then moves to step two to "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014)).

When evaluating a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the nonmoving party. *See Mentone Sols. LLC v. Digi Int'l Inc.*, Case Nos. 2021-1202 & 2021-1203, 2021 WL 5291802, at *3 (Fed. Cir. Nov. 15, 2021). If there are factual allegations

that, taken as true, prevent resolving patent eligibility as a matter of law, a motion to dismiss should be denied. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

## V. ARGUMENT

### A. *Alice* Step One: Evolution Fails to Show That the '459 Patent is Directed to an Abstract Idea

Evolution argues that the '459 Patent's claimed invention "targets" the abstract idea of "dynamically increasing payout odds in gambling games." D.I. 70 at 1, 3. This characterization falls into the trap of "describing the claims at such a high level of abstraction" so as to "ensure[] that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337. In fact, the purported abstract idea identified by Evolution addresses, at most, the "dynamic raised odds" limitation of independent claims 1 and 8 while ignoring the remaining limitations of the '459 Patent's claims.[5] For example, Evolution's blanket reference to "dynamically increasing payout odds" does not capture the more exacting concept encompassed by "the dynamic raised odds choosing module" limitation, which is that the dynamic raised odds are generated such that the RTP is controlled below 100%, a concept acknowledged by Evolution elsewhere in its Brief. *See, e.g.*, D.I. 70 at 5 ("[T]he increase in odds is

---

[5] Evolution did not perform a representative claim analysis in its Motion. Because Evolution's *Alice* analysis fails with respect to the independent claims, however, it is not necessary to separately analyze any dependent claims.

not entirely random, as the ’459 Patent describes an approach whereby higher increases in odds are less likely … . By making higher odds less likely, the player’s chance of winning ‘is controlled below 100%.’”).[6] Thus, Evolution’s generic reference to “dynamically increasing payout odds” fails to capture the essence of this claimed feature,[7] let alone the remaining claim elements.

In an analogous gaming case, the court in *Skillz Platform Inc. v. AviaGames Inc.*, C.A. No. 21-2436-BLF, 2022 WL 783338, at *9 (N.D. Cal. Mar. 14, 2022), criticized the defendant for proposing that the claims of the patent-at-issue were “directed to the abstract idea of ‘managing a game,’” which “only appear[ed] to pertain to the final step of executing a game using pseudo-random numbers” and did not account for other limitations of the claim. The *Skillz* court found that defendant described the claims at too high a level of abstraction and thus “failed [to] show that the claims of the [patent-at-issue were] directed to abstract ideas at the pleading

---

[6] This feature, among others, is also why the ’459 Patent’s claimed invention cannot be performed by a human (i.e., “[a] pit boss”). *See* D.I. 70 at 13. A pit boss “select[ing] random outcomes, display[ing] odds, and pay[ing] winners,” *id.*, does not account for the need to control the RTP below 100%, nor does it account for the timing in which the dynamic raised odds must be generated to “replace[] the original payout odds” as claimed.

[7] The “dynamic raised odds choosing module” limitation is a contested claim term that the parties have requested the Court to construe. D.I. 60 at 3-8. Jumbo’s proposed construction captures the concept that the RTP is controlled below 100%; Evolution’s proposal does not. *Id.* Thus, claim construction may be necessary to fully evaluate the scope of the ’459 Patent’s claimed invention. *Supra* n.1.

stage." *Id.* Here too Evolution's overbroad characterization of the '459 Patent's purported abstract idea warrants denial of Evolution's Motion.

Evolution separately cites to a litany of Federal Circuit gaming cases, arguing that the Federal Circuit has "uniformly held" that "wagering-game claims" like those in the '459 Patent are "directed to abstract ideas." D.I. 70 at 10-12 (citing *Beteiro*, *In re Smith*, and *Marco Guldenaar*). According to Evolution, these cases are "particularly instructive" and a "close factual analogue" to the invention claimed by the '459 Patent. Yet, in its Nevada case, Evolution argued that the dynamic raised odds technology at issue was "nothing like the claims found ineligible as directed to gaming-related abstract ideas in *In re Smith*, *Marco Guldenaar*, and *Planet Bingo*." Ex. 2 ¶ 97. Rather, as Evolution argued in Nevada, "the claims in *In re Smith* and *Marco Guldenaar* 'simply recited the rules of dice and wagering games.' … [T]here is 'little similarity between claims that outline abstract rules for playing a game and the [Evolution Patents'] claims … , which pertain to specific steps for setting up common, randomized gameplay in a networked computing environment.'" *Id.* By Evolution's own reasoning from its Nevada case, the '459 Patent is distinguishable from the Federal Circuit precedent that Evolution now purports to rely upon.

In *Beteiro*, claims directed to "exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located" were held to be abstract because they were "largely (if not entirely) result-focused functional

language, containing no specificity about how the purported invention achieves those results." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355-56 (Fed. Cir. 2024). Evolution analogizes these facts to the '459 Patent because the '459 Patent purportedly "fails to specify how [its] crucial functions are achieved." D.I. 70 at 11. Evolution asserts that the '459 Patent "explicitly states that these 'calculation … ***details are omitted herein.***'" *Id.* (citing '459 Patent at 3:45-47). But this mischaracterizes the '459 Patent. Omitted by Evolution (with its ellipsis) is the '459 Patent's statement that the calculation to determine "the appearing probability of different raised odds" is performed "*according to actual requirements or announced regulations*." It is details about those requirements and regulations that are omitted (such as state-by-state regulations on minimum-odds requirements for particular games), not details about how the calculation may be performed to determine "the appearing probability of different raised odds." '459 Patent at 3:45-47. Such a calculation *is* taught by the '459 Patent, as discussed above. Thus, because the '459 Patent *does* disclose "how" its "crucial functions are achieved," *Beteiro* is inapposite, and the '459 Patent is distinguishable from the *Light & Wonder* case.

Evolution also points to several district court cases that "have consistently followed" the cited Federal Circuit precedent in gaming cases—*NexRF Corp.*; *Game Play Network, Inc. v. Potent Sys., Inc.*; and *Scibetta v. Slingo, Inc.* Each is distinguishable from the '459 Patent for the same reasons as the cited Federal Circuit

cases. In *NexRF*, the court found that the claims were directed to "the abstract idea of remotely playing a slot machine on a server" and found "[p]laintiff's argument that 'the patents-in-suit are directed to technical improvements in online gaming systems' … unpersuasive because Claim 1 of the '229 patent does not explain how any of the purported technical improvements work." 547 F. Supp. 3d at 987-88. *Scibetta* mirrored and adopted *In re Smith* because "both concern patents directed towards a wagering game using at least one standard deck of cards." C.A. No. 16-8175-JMV, 2018 WL 466224, at *10 (D.N.J. Jan. 17, 2018). And *Game Play* similarly adopted *In re Smith* because the claims were "directed to the rules of a wagering game, which is itself abstract." C.A. No. 23-323-GBW, 2024 WL 3226214, at *7-8 (D. Del. June 28, 2024).

Ultimately, the '459 Patent's claimed invention is not abstract because it provides a patentable improvement to wagering game technology. The claimed technology goes beyond a simple recitation of game rules. The claimed apparatus utilizes a calculation element that includes both a dynamic raised odds choosing module and a payout module in which the dynamic raised odds choosing module is connected to the betting table to retrieve game results and replace the original odds associated with at least one of those results, which is randomly selected, with dynamic raised odds, which are displayed to the player on an electronic display board. *See, e.g.*, '459 Patent at Claim 1. The dynamic raised odds choosing module

is configured in accordance with the teachings of the '459 Patent (and its incorporated parent application) to select variable raised odds for one or more game results whereby the RTP is controlled below 100%. And the payout module is configured to pay out on winning wagers, based either on the original odds associated with the game result or the dynamic raised odds if raised odds were applied to that game result during the game.

Taken as a whole, claim 1 of the '459 Patent details a multi-component apparatus that provides a technical improvement over traditional gambling game technology and is thus not abstract.[8] *See McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1316 (Fed. Cir. 2016) (finding claim not directed to abstract idea where, "[w]hen looked at as a whole, claim 1 is directed to a patentable, technological improvement over the existing, manual 3–D animation techniques"); *see also Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024) ("[W]hen read as a whole, claim 11 is directed to a specific means that improves the relevant technology.").

Accordingly, Evolution's Motion fails because the claimed inventions of the '459 Patent are not abstract under *Alice* step one.

---

[8] Evolution curiously argues that "labeling a claim an 'apparatus' does not make it one for § 101 purposes." D.I. 70 at 10. The '459 Patent's claimed apparatus does not morph into a method claim for purposes of evaluating the patentability of the invention under § 101.

### B. *Alice* Step Two: The Claims of the '459 Patent Contain an Inventive Concept

The Federal Circuit precedent on which Evolution relies makes clear that gaming technology is patentable subject matter. Indeed, the Court highlighted that it "could envisage … claims directed to conducting a game using a new or original deck of cards" providing an inventive concept under *Alice* step two. *In re Smith*, 815 F.3d 816, 819 (Fed. Cir. 2016); *see also In re Marco Guldenaar*, 911 F.3d 1157, 1162 (Fed. Cir. 2018) (same). Here, the '459 Patent's claimed "incentive apparatus" is analogous to the "new or original deck of cards" envisaged by the *Smith* court. Evolution describes its Lightning Roulette product accused of infringement here as a game that is "revolutionary," "unlike any other roulette game that came before it," and the "largest and most profitable roulette game in the world." Ex. 2 ¶¶ 14-22. As Jumbo has alleged, "[t]he novel innovation presented in the '459 Patent provides a compelling advancement in gaming systems and technology that results in player engagement and overall game excitement, while reducing corresponding probabilities to ensure the House does not lose money over the long term, despite the higher payouts." D.I. 54 ¶ 28. These allegations, taken as true at this stage, plausibly allege that the '459 Patent's claimed invention is directed to patentable subject matter.

Moreover, as Evolution acknowledged in the Nevada case, Ex. 2 ¶¶ 122-23, the step-two inquiry "requires more than recognizing that each claim element, by

itself, was known in the art." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). As the Federal Circuit has explained, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.* In *BASCOM*, the Federal Circuit found that even where the claimed components "taken individually, recite generic computer, network and Internet components," the "claims do not merely recite the abstract idea of filtering," but instead recite a "specific, discrete implementation of the abstract idea of filtering content." *Id.* at 1349-50.

Here, the unique combination of elements that make up the claimed invention presents an "inventive concept" sufficient to survive *Alice* step two. The '459 Patent's introduction of new, original game elements—namely, a calculation element that includes a dynamic raised odds choosing module and a payout module—in combination with a betting table and electronic display presents an inventive concept that was not well-understood, routine, or conventional. The claimed technology transforms games "from the traditional model that seeks to imitate physical gaming to a system that adds excitement and unpredictability to the outcome." D.I. 54 ¶ 22; *see also* Ex. 2 ¶¶ 127-29. Just as in *BASCOM* where the claims did not "preempt all ways of filtering content on the Internet," 827 F.3d at 1350, the '459 Patent's claimed invention does not preempt all ways of using increased odds in gambling games (or even preempt all ways of playing specific

games like roulette, baccarat, and dice). Rather, the dynamic raised odds replace standard payout odds for randomly selected game results during the course of each game and, through a choosing module, are selected such that even with the potential for higher payouts, the RTP is controlled below 100%. *See, e.g.*, '459 Patent at Claims 1-4, 8-11. In any event, at minimum, a factual dispute exists that cannot be resolved at the motion to dismiss stage. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019) ("We have no basis, at the pleadings stage, to say that these claimed techniques, among others, were well-known or conventional as a matter of law.").

In the end, the '459 Patent's claimed invention presents a technological improvement that increases "player engagement and overall game excitement," thereby providing "a solution to a nagging problem—namely that players become bored and disengage with conventional gaming technology, resulting in fewer players and lost revenue." D.I. 54 ¶ 22. Under *Alice* step two, the '459 Patent is patent eligible.

## VI. CONCLUSION

Evolution's Motion should be denied. If the Court concludes otherwise, however, any dismissal should be without prejudice as this is the first time Jumbo's pleadings are challenged under § 101, and Jumbo should be granted leave to address any pleading defects identified by the Court concerning the patentability of the

claimed subject matter. *See Redwood Techs., LLC v. Netgear, Inc.*, 738 F. Supp. 3d 511, 526-27 (D. Del. 2024) ("[Because] Redwood may be able to fix the deficiencies identified by the Court, the Court dismisses Redwood's Complaint without prejudice to Redwood's ability to move for leave to amend its Complaint … .").

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

Rodger D. Smith II (#3778)
Brian P. Egan (#6227)
Cameron P. Clark (#6647)
J. Layne Lancaster (#7616)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@morrisnichols.com
began@morrisnichols.com
cclark@morrisnichols.com
llancaster@morrisnichols.com

*Attorneys for Plaintiff*

OF COUNSEL:

Gerry Silver
SULLIVAN & WORCESTER LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 660-3096

Kimberly B. Herman
Ryan M. Rosenblatt
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800

September 11, 2026

**WORD COUNT CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing document contains 4,777 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the brief. The word count does not include the cover page, tables of contents and authorities, proposed construction charts, or the counsel blocks.

*/s/ Brian P. Egan*

Brian P. Egan (#6227)

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2026, copies of the foregoing were caused to be served upon the following in the manner indicated:

Dana K. Severance, Esquire
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Barry J. Herman, Esquire
Julie C. Giardina, Esquire
WOMBLE BOND DICKINSON (US) LLP
100 Light Street, 26th Floor
Baltimore, MD 21202
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

Matthew K. Blackburn, Esquire
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, CA 94111
*Attorneys for Defendant*

*VIA ELECTRONIC MAIL*

*/s/ Brian P. Egan*

Brian P. Egan (#6227)