**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JUMBO TECHNOLOGY CO., LTD., Plaintiff, | ) | |
| v. | ) | C.A. No: 25-cv-660-JCG |
| EVOLUTION US LLC and EVOLUTION MALTA LIMITED, Defendants. | ) | **JURY TRIAL DEMANDED** |

# DEFENDANT EVOLUTION MALTA LIMITED'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)


OF COUNSEL:

Barry J. Herman
Julie C. Giardina
WOMBLE BOND DICKINSON (US) LLP
100 Light Street, 26th Floor
Baltimore, MD 21202
(410) 545-5830
barry.herman@wbd-us.com
julie.giardina@wbd-us.com

Matthew K. Blackburn
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2800
San Francisco, CA 94111
(650) 687-8442
matt.blackburn@wbd-us.com

Dana K. Severance
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320
dana.severance@wbd-us.com

*Attorneys for Defendant Evolution Malta Limited*

# TABLE OF CONTENTS

Page

I. ARGUMENT ........................................ 1

A. The Nevada Case Is a Red Herring. ........................................ 1

B. Claim Construction Has No Impact on Dismissal. ........................................ 3

C. Jumbo's New Mathematical Formula Is Irrelevant. ........................................ 4

D. Jumbo's Remaining Step One Arguments Are Meritless. ........................................ 7

E. Jumbo's Step Two Arguments Are Meritless. ........................................ 9

F. Jumbo Improperly Requests a Blank-Check Amendment. ........................................ 10

II. CONCLUSION ........................................ 10

# TABLE OF AUTHORITIES

**Cases**


*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) .......... 9

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024) .......... 1, 4, 10

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*,
224 F.3d 1308 (Fed. Cir. 2000) .......... 3

*Diamond v. Diehr*,
450 U.S. 175 (1981) .......... 6

*Gottschalk v. Benson*,
409 U.S. 63 (1972) .......... 6

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) .......... 9

*Intell. Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) .......... 5

*Lemelson v. TRW, Inc.*,
760 F.2d 1254 (Fed. Cir. 1985) .......... 1

*New Hampshire v. Maine*,
532 U.S. 742 (2001) .......... 2

*Optis Cellular Tech., LLC v. Apple Inc.*,
139 F.4th 1363 (Fed. Cir. 2025) .......... 5, 8, 9

*Parker v. Flook*,
437 U.S. 584 (1978) .......... 6

*Redwood Techs., LLC v. Netgear, Inc.*,
738 F. Supp. 3d 511 (D. Del. 2024) .......... 10

*Skillz Platform Inc. v. Aviagames Inc.*,
No. 21-CV-02436-BLF, 2022 WL 783338 (N.D. Cal. Mar. 14, 2022) .......... 8


**Statutes**


35 U.S.C. § 101 .......... 1, 5, 6

Jumbo's arguments are meritless. The '459 Patent violates 35 U.S.C. § 101.

# I. ARGUMENT

## A. The Nevada Case Is a Red Herring.

Jumbo heavily relies in its opposition on statements by Defendant Evolution Malta in a prior patent infringement lawsuit in the District of Nevada (the "Nevada Case"). D.I. 80 at 2-3, 7-9, 13, 17. Jumbo asserts ***without any authority*** that alleged differences between Evolution Malta's "prior and current assertions" create a "factual" issue that "cannot be resolved" through a motion to dismiss. *Id*. at 3. In reality, the Nevada Case is entirely irrelevant.[1]

First, Evolution Malta's positions are not "clearly inconsistent." Jumbo readily agrees that the Nevada Case involved entirely different patents. Separate patents must be separately evaluated for validity. *See Lemelson v. TRW, Inc*., 760 F.2d 1254, 1267 (Fed. Cir. 1985) (noting that even separate claims within a single patent must be separately evaluated for validity). Consequently, the validity of the

[1] Jumbo also relies on the examiner's statements regarding § 101 issues. D.I. 80 at 3. However, "a patent examiner's consideration of Section 101 issues does not ***in any way*** shield the patent's claims from Article III review for patent eligibility." *Beteiro, LLC v. DraftKings Inc*., 104 F.4th 1350, 1359 (Fed. Cir. 2024) (internal quotation marks and citation omitted; emphasis added).

’459 Patent depends on the content of that patent. No amount of argument regarding Evolution Malta’s patents in the Nevada Case can save Jumbo’s patent.

Jumbo nevertheless states that “Evolution should be held to its prior pleadings” (D.I. 80 at 3), suggesting notions of estoppel limit Evolution Malta’s arguments in this Case. Tellingly, Jumbo cites no authority whatsoever, and there is none.

Parties may sometimes be prevented from presenting certain arguments under the equitable doctrine of judicial estoppel. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). However, the Supreme Court has held that such estoppel only applies when a party (1) adopts positions that are “clearly inconsistent” in two proceedings, and (2) “succeeded in persuading a court to accept that party’s earlier position.” *Id*. at 750. “Absent success in a prior proceeding, a party’s later inconsistent position introduces no risk of inconsistent court determinations and thus poses little threat to judicial integrity.” *Id*. at 750-51 (citations and internal quotation marks omitted).

Evolution Malta is not judicially estopped in this Case. To start, Jumbo makes only a half-hearted attempt to show that the issues in the Nevada Litigation are “clearly inconsistent” with this Case. For instance, Jumbo posits that the patents in the Nevada Case “largely mirror” the ’459 Patent based on a conclusory assertion that the patents all involve “largely the same technology” and a cursory discussion of a few generic, cherry-picked claim terms. D.I. 80 at 2, 6, 8. However, because

claims determine the scope of patents, claims are only equivalent when ***all*** of their claim language is substantively identical. *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000). Because the Nevada Case and this Case involve different patent claims, Evolution Malta's arguments in favor of the eligibility in the Nevada Case are not inconsistent with its arguments here.

Second, Evolution Malta achieved no "prior success." Jumbo admits that the Nevada court "held that the Evolution Patents were patent ineligible." D.I. 80 at 9. Thus, far from achieving "success in a prior proceeding," the district court in the Nevada Case found the patent-in-suit invalid under § 101. Consequently, Evolution Malta cannot be estopped from presenting any arguments in this Case.[2]

**B. Claim Construction Has No Impact on Dismissal.**

Jumbo asserts that Evolution Malta's Motion should be denied due to "claim construction issues" regarding the '459 Patent. D.I. 80 at 2 & n.1. Jumbo identifies only one term disputed by the parties: whether the "dynamic raised odds choosing module" requires the "return to player" be "controlled below 100%." *Id*. at 12 n.7. However, Jumbo fails to explain why this limitation affects the *Alice* analysis. As

[2] Jumbo also suggests without authority that Evolution Malta is estopped because the Nevada Case is subject to appeal. D.I. 80 at 2, 9 n.4. Unless and until Evolution Malta achieves "success" in some prior case, estoppel cannot apply.

such, while preserving its claim construction arguments, Evolution Malta agrees to use Jumbo's construction for this Motion.

Indeed, Jumbo's construction does nothing to render the claims less abstract. Jumbo asserts that the "return to player" or "RTP" is the percentage of bets that a player "on average … can expect to recover." *Id.* at 6 n.3. In other words, by requiring that the "RTP is controlled below 100%" Jumbo merely asserts that the players "on average" win less than 100% of their bets, that is, the house always wins in the end. As a result, Jumbo's construction is inherent in the abstract idea of dynamically raising payout odds in gambling games since game operators will only raise odds insofar as they can "on average" profit from the increase.

**C. Jumbo's New Mathematical Formula Is Irrelevant.**

Evolution Malta explained that the '459 Patent describes the "dynamic raised odds choosing module" only in functional terms: D.I. 70 at 11, 14-15. Claims "drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results … are almost always found to be ineligible for patenting under Section 101." *Beteiro, LLC*, 104 F.4th at 1356 (citation omitted). In response, Jumbo asserts that the '459 Patent includes an "algorithm to generate the dynamic raise odds" because (i) the '459 Patent incorporates by reference its '350 parent application, and (ii) the '350

Application includes a mathematical formula. D.I. 80 at 1. Jumbo is wrong for three reasons.[3]

First, Jumbo has not asserted that the '459 Patent is ***limited*** to the formula in the '350 Application. Rather, Jumbo describes the formula as an "***exemplary*** algorithm." *Id*. Notably, Jumbo has not included the formula in any of its proposed claim constructions. *See* D.I. 60. Jumbo thus contends that the '459 Patent encompasses ***any*** algorithm to generate the dynamic raise odds but fails to explain ***how*** the increased odds are determined—perhaps in all cases except one. *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 (Fed. Cir. 2016) (holding that a patent violates § 101 when a "mechanism is not described" but is "stated to be the essential innovation"). Thus, even under Jumbo's view, the '459 Patent claims only functional results.

Second, even if the '459 Patent were limited to Jumbo's formula, the patent would violate § 101. Courts have long recognized that mathematical formulas are ineligible for patent protection. *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1379 (Fed. Cir. 2025); *Gottschalk v. Benson*, 409 U.S. 63, 71-72 (1972) ("the patent would wholly pre-empt the mathematical formula and in practical effect

---

[3] To narrow the dispute and for the purposes of this Motion ***only***, Evolution Malta agrees that the '459 Patent incorporates by reference the '350 Application.

would be a patent on the algorithm itself.") . Furthermore, merely "limit[ing] the use of the formula to a particular technological environment" does not satisfy § 101. *Diamond v. Diehr*, 450 U.S. 175, 191 (1981). Patents also violate § 101 when "[t]he only novel feature of the method is a mathematical formula." *Parker v. Flook*, 437 U.S. 584, 585 (1978).

Jumbo asserts that the formula is distinctly related to gambling in that it is an "algorithm for generating raised odds." D.I. 80 at 6. Jumbo seeks to patent ***all*** uses of the formula, so that the '459 Patent would "in practical effect … be a patent on the algorithm itself." *Gottschalk*, 409 U.S. at 71-72. Jumbo nevertheless contends that the '459 Patent "does not preempt all ways of using increased odds in gambling games," but Jumbo does not identify any way of using its formula without infringing the '459 Patent. D.I. 80 at 18. To the extent that formula has use outside of gambling, the '459 Patent impermissibly seeks to limit use of Jumbo's formula to "a particular technological environment," that is, gambling. *Diamond*, 450 U.S. at 191. Additionally, if the "dynamic raised odds choosing module" were limited to the formula from the '350 Application, then the formula would be "the only novel feature," thereby violating § 101. *Parker*, 437 U.S. at 585.

Third, Jumbo mischaracterizes its new formula, which does not choose raised odds. The '350 Application states that the formula can be used to calculate the "player's return ratio." D.I. 80-1 at JUMBO_000031-32. This return ratio can then

be compared to a "target value" to ensure the "players return ratio is approximate to the target value." *Id*. Consequently, the formula in the '350 Application determines whether the "raised odds" are too low or too high, not to pick the odds in the first place. The formula is not a selection algorithm; it is a rejection criterion. The formula is not an "algorithm to generate the dynamic raised odds." Indeed, the '350 Application describes the raised odds as "given," not "selected." *Id*. The '459 Patent further confirms this understanding as it includes two separate examples of increased odds for the "banker pair" result in Baccarat. '459 Patent at 3:27-40. The patent describes these examples as ensuring that the "player's return ratio is controlled below 100%." *Id*. Presumably, both examples satisfy Jumbo's formula. Thus, the formula does not even provide a mechanism for choosing ***between*** the two options, much less for initially "choosing" the raised odds.

**D. Jumbo's Remaining Step One Arguments Are Meritless.**

Jumbo offers three additional erroneous arguments regarding *Alice* Step One. First, Jumbo states that Evolution Malta "overgeneralizes its framing of the purported abstract idea" by "ignoring the remaining limitations of the '459 Patent's claims." D.I. 80 at 4, 11. Jumbo misstates the Step One analysis. Here, courts do not engage in a term-by-term review. Rather, courts "evaluate the ***focus*** of the claimed advance over the prior art to determine if the claim's character ***as a whole*** is directed

to excluded subject matter." *Optis Cellular Tech., LLC*, 139 F.4th at 1379 (cleaned up).

Second, Jumbo asserts that the '459 Patent is not directed to an abstract idea because it provides a "technical improvement over conventional gaming technology." D.I. 80 at 3-4, 15-16. However, the Federal Circuit rejected an identical argument in *Beteiro*. 104 F.4th at 1357. The Federal Circuit affirmed that "patent claims may be non-abstract in *Alice* step one if the focus of the claimed advance is on an improvement," but emphasized that this approach is limited to "the realm of computer-related technology." *Id*. (quotation marks and citation omitted). Critically, the '459 Patent describes no "technological improvement" to computer technologies. The '459 Patent merely adds the abstract concept of dynamically increased gambling odds to conventional gambling technologies, including generic computing components. For the same reason, Jumbo's reliance on *Skillz Platform Inc. v. Aviagames Inc*., No. 21-CV-02436-BLF, 2022 WL 783338 (N.D. Cal. Mar. 14, 2022), is misplaced. D.I. 80 at 12. There, the district court found that the invention was "directed to a specific improvement in computer technology" related to coordinating randomized computer-based gameplay among users in a networked environment. *Id*. at *10.

Third, Jumbo contends that the '459 Patent is not directed towards an abstract idea because it could not be performed by a human since a "pit boss" cannot "control

RTP below 100%." D.I. 80 at 12 n.6. If Jumbo means that a human could not apply its new mathematical formula, then Jumbo fails to explain why the formula defies manual calculation with pencil and paper. Certainly, "the improved speed or efficiency" of a computer cannot "provide a sufficient inventive concept." *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).

**E. Jumbo's Step Two Arguments Are Meritless.**

Jumbo offers three erroneous arguments regarding *Alice* Step Two. First, Jumbo asserts that an inventive concept arises from the "unique combination of elements that make up claimed invention." D.I. 80 at 17-18. However, Jumbo's asserted "unique combination" merely recites the "dynamic raised odds choosing module" and the "payout module," and these features stem directly from the abstract idea of dynamically raising payout odds in gambling games. D.I. 80 at 18. "The abstract idea itself cannot supply the inventive concept, no matter how groundbreaking the advance." *Optis Cellular Tech., LLC*, 139 F.4th at 1380 (internal quotation marks omitted). Likewise, Jumbo's discussion of *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, actually favors dismissal, as that case held that "[a]n inventive concept … must be significantly more than the abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea on a computer." 827 F.3d 1341, 1349 (Fed. Cir. 2016). Second, Jumbo asserts that its patent "provides a compelling advancement in gaming systems." D.I. 80 at 17.

Evolution Malta has already explained that claims of novelty cannot affect eligibility. D.I. 70 at 17. Third, Jumbo summarily asserts that a "factual dispute" prevents dismissal. D.I. 80 at 19. However, Jumbo fails to ***identify*** any factual issues related to *Alice* Step Two. The Federal Circuit in *Beteiro* rejected such an approach to defeating a motion to dismiss through conclusory allegations. 104 F.4th at 1357.

### F. Jumbo Improperly Requests a Blank-Check Amendment.

Jumbo states that it "should be granted leave to address any pleading defects." D.I. 80 at 19-20. However, the authority Jumbo cites holds only that a plaintiff should be allowed "to ***move*** for leave amend," not that leave should automatically be granted. *Redwood Techs., LLC v. Netgear, Inc*., 738 F. Supp. 3d 511, 527 (D. Del. 2024). Jumbo has not suggested any amendment related to eligibility and any such amendment would be futile. Accordingly, the Court should not grant leave to amend the complaint a third time.

## II. CONCLUSION

For the foregoing reasons, Evolution Malta's motion should be granted.

Dated: September 25, 2026

Respectfully submitted,

*<u>/s/ Dana K. Severance</u>*
Dana K. Severance (#4869)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320
dana.severance@wbd-us.com

*Attorneys for Defendant Evolution Malta Limited*

*Of Counsel:*

Barry J. Herman
Julie C. Giardina
WOMBLE BOND DICKINSON (US) LLP
100 Light Street, 26th Floor
Baltimore, MD 21202
(410) 545-5830
barry.herman@wbd-us.com
julie.giardina@wbd-us.com

Matthew K. Blackburn
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2800
San Francisco, CA 94111
(650) 687-8442
matt.blackburn@wbd-us.com

## WORD COUNT CERTIFICATION

The undersigned counsel hereby certifies that the foregoing document complies with the type, font and word limitations set forth in this Court's Standing Order Regarding Briefing in All Cases. The foregoing document is in 14-point Times New Roman font and contains 2,419 words, which were counted by using the word count feature in Microsoft Word. The word count does not include the cover page, tables of contents and authorities, signature block, and word count certification.

*/s/ Dana K. Severance*
Dana K. Severance (#4869)